Scott S. Thomas, Bar No. 031418
sst@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
2375 East Camelback Road, 6th Floor
Phoenix, Arizona 85016
Telephone: (602) 344-9549
Facsimile: (602) 344-9653

Attorneys for Plaintiffs Pulte Home Company, LLC and Pulte Development Corporation

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA, PHOENIX DIVISION

| | |
|---|---|
| Pulte Home Company, LLC, a Michigan limited liability corporation; and Pulte Development Corporation, a Michigan corporation,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>United Specialty Insurance Company, a Delaware corporation; Midwest Family Mutual Insurance Company, an Iowa corporation; The Cincinnati Insurance Company, an Ohio corporation; The Cincinnati Casualty Company, an Ohio corporation; Cincinnati Indemnity Company, an Ohio corporation; Knight Specialty Insurance Company, a Delaware corporation; Ironshore Indemnity Incorporated, a Minnesota corporation,<br><br>　　　　　Defendant. | Case No.<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>**(1) DECLARATORY JUDGMENT; AND**<br><br>**(2) BREACH OF CONTRACT.** |

Plaintiffs Pulte Home Company, LLC and Pulte Development Corporation (collectively, "Plaintiffs") hereby allege as follows:

## PARTIES

1.　At all times mentioned herein, Pulte Home Company, LLC was and is a

COMPLAINT

Michigan limited liability company with its principal place of business in Georgia.

2. At all times mentioned herein, Pulte Development Corporation was and is a Michigan corporation with its principal place of business in Georgia.

3. Plaintiffs are informed and believe, and on that basis allege, that United Specialty Insurance Company ("USIC") was and is a Delaware corporation with its principal place of business in Texas.

4. Plaintiffs are informed and believe, and on that basis allege, that Midwest Family Mutual Insurance Company ("Midwest Family") was and is an Iowa corporation with its principal place of business in Iowa.

5. Plaintiffs are informed and believe, and on that basis allege, that The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") was and is a Delaware corporation with its principal place of business in Ohio.

6. Plaintiffs are informed and believe, and on that basis allege, that Knight Specialty Insurance Company ("KSIC") was and is a Delaware corporation with its principal place of business in California.

7. Plaintiffs are informed and believe, and on that basis allege, that Ironshore Indemnity Insurance Company ("Ironshore"), a Minnesota corporation with its principal place of business in the state of New York.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00 per defendant, exclusive of interest and costs, and because complete diversity exists between Pulte and Defendants.

9. Venue is proper in this Court in accordance with 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

**The Trailside at Happy Valley Project**

10. Pulte is a homebuilder that participated in the construction of a residential project known as the Trailside at Happy Valley community (the

"Project"), which is located in Peoria, Arizona.

11. Pulte performed no work on the Project; instead, subcontractors performed all of the work.

12. Austin Electrical ("Austin") subcontracted with Pulte to, among other things, perform electrical work at the Project.

13. Brewer Plumbing ("Brewer") subcontracted with Pulte to, among other things, perform plumbing work on the Project.

14. Circle B Grading ("Circle B") subcontracted with Pulte to, among other things, perform grading work on the Project.

15. Metric Roofing ("Metric") subcontracted with Pulte to, among other things, perform roofing labor and install roofing systems on the Project.

16. Paul Johnson Drywall ("Paul Johnson") subcontracted with Pulte to, among other things, perform drywall work on the Project.

17. Poco Verde Pools & Landscaping ("Poco Verde") subcontracted with Pulte to, among other things, perform landscaping work on the Project.

18. R-Stucco, LLC ("R-Stucco") subcontracted with Pulte to, among other things, perform lathe/stucco work on the Project.

19. Rudolfo Brothers ("Rudolfo") subcontracted with Pulte to, among other things, perform lathe/stucco work on the Project.

20. Wallcon Roconcrete ("Wallcon") subcontracted with Pulte to, among other things, perform foundation/flatwork labor on the Project.

21. XO Windows ("XO") subcontracted with Pulte to, among other things, install window systems on the Project.

22. Younger Brothers ("Younger") subcontracted with Pulte to, among other things, perform framing labor on the Project.

**The USIC Policies**

23. Austin, Circle B, Metric, Paul Johnson, Poco Verde, R-Stucco, Rudolfo, Wallcon, and XO performed work at the Project pursuant to one or more

-3-
COMPLAINT

written subcontracts that it entered into with Pulte.

24. Each subcontract required Austin, Circle B, Metric, Paul Johnson, Poco Verde, R-Stucco, Rudolfo, Wallcon, and XO to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

25. Austin, Circle B, Metric, Paul Johnson, Poco Verde, R-Stucco, Rudolfo, Wallcon, and XO obtained commercial general liability policies from USIC (the "USIC Policies"):

| Insurer | Policy Number(s) | Policy Period(s) | Named Insured | Additional Insured |
|---|---|---|---|---|
| USIC | BVO1412682 | 3/14/14-3/14/15 | Austin | Pulte |
| | BVO1523350 | 3/14/15-3/14/16 | | |
| | BVO1533468 | 6/14/14-3/14/16 | | |
| | BVO1633618 | 3/14/16-12/1/16 | | |
| | ATN-SF1711271 | 12/1/17-12/1/18 | | |
| | ATN-SF1823357 | 12/1/18-12/1/19 | | |
| USIC | BVO1332391 | 10/15/13-10/15/14 | Circle B | Pulte |
| | BVO1443073 | 10/15/14-10/15/15 | | |
| | BTO1996972 | 8/4/16-10/1/16 | | |
| | BVO1674170 | 10/1/16-10/1/17 | | |
| | ATN-ATL1780646 | 10/1/17-10/1/18 | | |
| | ATN-ATL1890919 | 10/1/18-10/1/19 | | |
| | ATN-ATL19101816 | 10/1/19-10/1/20 | | |
| | ATN20115559 | 10/1/20-10/1/21 | | |
| | ATN21127274 | 10/1/21-10/1/22 | | |

| | | | | |
|---|---|---|---|---|
| USIC | BVO1432778 | 5/1/14-5/1/15 | Metric | Pulte |
|      | BVO1543411 | 5/1/15-5/1/16 |        |       |
|      | BVO1653638 | 5/1/16-5/1/17 |        |       |
|      | ATN-ATL1760349 | 5/1/17-5/1/18 |     |       |
| USIC | ATN-SF1750422 | 4/1/17-4/1/18 | Paul Johnson | Pulte |
|      | ATN-SF1861698 | 4/1/18-4/1/19 |              |       |
| USIC | ATN-SF1710598 | 9/1/17-9/1/18 | Poco Verde | Pulte |
|      | ATN-SF1821498 | 9/1/18-9/1/19 |            |       |
|      | ATN-SF1935123 | 9/1/19-9/1/20 |            |       |
|      | ATN-2046805 | 9/1/20-9/1/21 |              |       |
| USIC | ATN-SF1710888 | 8/1/17-8/1/18 | R-Stucco | Pulte |
|      | ATN-SF1823074 | 8/1/18-8/1/19 |          |       |
| USIC | BTO1416869 | 5/15/14-5/15/15 | Rudolfo | Pulte |
|      | BTO1638674 | 8/4/16-5/15/17 |         |       |
|      | ATN-SF1740605 | 5/15/17-5/15/18 |     |       |
|      | ATN-SF1851871 | 5/15/18-5/15/19 |     |       |
|      | ATN-SF1964507 | 5/15/19-5/15/20 |     |       |
| USIC | ATN-SF1730971 | 8/25/17-8/25/19 | Wallcon | Pulte |
|      | ATN-SF1843151 | 8/25/18-8/25/19 |         |       |
|      | ATN-SF1955068 | 8/25/19-8/25/20 |         |       |
|      | ATN2066777 | 8/25/20-8/25/21 |            |       |
| USIC | BVO1312053 | 2/21/13-2/21/14 | XO | Pulte |
|      | BVO1422621 | 2/21/14-2/21/15 |    |       |
|      | BVO1533210 | 2/21/15-2/21/16 |    |       |
|      | BVO1643568 | 2/21/16-2/21/17 |    |       |
|      | ATN-ATL1750053 | 2/21/17-2/21/18 ||       |
|      | ATN-ATL1860909 | 2/21/18-2/21/19 ||       |

| | | | |
|---|---|---|---|
| | BTN1814366 | 2/21/18-2/21/19 | |
| | ATN-ATL1961771 | 2/21/19-2/21/20 | |
| | BTN1925098 | 2/21/19-2/21/20 | |
| | ATN 2075576 | 2/21/20-2/21/21 | |
| | ATN2187350 | 2/21/21-2/21/22 | |

26. The USIC Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Austin, Circle B, Metric, Paul Johnson, Poco Verde, R-Stucco, Rudolfo, Wallcon, and XO's work.

27. The coverage afforded under the USIC Policies requires Defendant USIC to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Austin, Circle B, Metric, Paul Johnson, Poco Verde, R-Stucco, Rudolfo, Wallcon, and XO's work or operations.

**The Midwest Family Policies**

28. Brewer performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

29. Each subcontract required Brewer to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

30. Brewer obtained commercial general liability policies from Midwest Family (the "Midwest Family Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Midwest Family | ACAZ0560102873 | 9/24/14-9/24/21 | Brewer | Pulte |

31. The Midwest Family Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Brewer's work.

32. The coverage afforded under the Midwest Family Policies requires Defendant Midwest Family to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Brewer's work or operations.

**The Cincinnati Policy**

33. Paul Johnson performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

34. Each subcontract required Paul Johnson to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

35. Paul Johnson obtained commercial general liability policies from Cincinnati (the "Cincinnati Policy"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Cincinnati | CSU0130165 | 4/1/19-4/1/20 | Paul Johnson | Pulte |

36. The Cincinnati Policy was endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Paul Johnson's work.

37. The coverage afforded under the Cincinnati Policy requires Defendant

Cincinnati to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Paul Johnson's work or operations.

**The KSIC Policies**

38. Circle B, Rudolfo, and Wallcon each performed work at the Project pursuant to one or more written subcontracts that they entered into with Pulte.

39. Each subcontract required Circle B, Rudolfo, and Wallcon to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

40. Circle B, Rudolfo, and Wallcon obtained commercial general liability policies from KSIC (the "KSIC Policies"):

| Insurer | Policy Number(s) | Policy Period(s) | Named Insured | Additional Insured |
|---|---|---|---|---|
| KSIC | KSVENS150026505 | 10/15/15-10/15/16 | Circle B | Pulte |
| KSIC | KSVENS151118101 KSVENS161165102 | 5/15/15-5/15/16 5/15/16-8/4/16 | Rudolfo | Pulte |
| KSIC | KSVENS151115800 KSVENS161161801 | 5/15/15-5/15/16 5/15/16-5/15/17 | Wallcon | Pulte |

41. The KSIC Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Circle B, Rudolfo, and Wallcon's work.

42. The coverage afforded under the KSIC Policies requires Defendant KSIC to defend and indemnify Pulte against all claims that allege (duty to defend) and result in (duty to indemnify) liability for covered property damage or bodily

injury arising out of Circle B, Rudolfo, and Wallcon's work or operations.

**The Ironshore Policies**

43. Younger performed work at the Project pursuant to one or more written subcontracts that it entered into with Pulte.

44. Each subcontract required Younger to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name Pulte and its affiliates as additional insureds under those insurance policies.

45. Younger obtained commercial general liability policies from Ironshore (the "Ironshore Policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---|---|---|---|---|
| Ironshore | AGZ0000100 | 7/1/11-7/1/12 | Younger | Pulte |
| | AGZ0000101 | 7/1/12-7/1/13 | | |
| | AGZ0000102 | 7/1/13-7/1/14 | | |
| | AGZ0000103 | 7/1/14-7/1/15 | | |
| | AGZ0000104 | 7/1/15-7/1/16 | | |
| | AGZ0000105 | 7/1/16-7/1/17 | | |
| | AGZ0000106 | 7/1/17-7/1/18 | | |
| | AGZ0000107 | 7/1/18-7/1/19 | | |
| | AGZ0000108 | 7/1/19-7/1/20 | | |
| | AGZ0000109 | 7/1/20-7/1/21 | | |

46. The Ironshore Policies were endorsed to cover Pulte as an "additional insured" with respect to liability arising out of Younger's work.

47. The coverage afforded under the Ironshore Policies requires Defendant Ironshore to defend and indemnify Pulte against all claims that allege (duty to

defend) and result in (duty to indemnify) liability for covered property damage or bodily injury arising out of Younger's work or operations.

**The *Petrisor* Claims**

48. In or around April 26, 2021, 13 homeowners in the Trailside at Happy Valley community in Peoria, Arizona initiated arbitration proceedings against Pulte, entitled *Gilberto and Kim Cosme, et al. v. Pulte Home Company, LLC, et al.*, Case No. 01-21-0003-5997, pending before the American Arbitration Association ("*Petrisor*"), alleging property damage to their homes as a result of defective construction, including but not limited to, property damage to and arising out from the construction of the assembly of stucco systems, foundation systems, concrete flatwork, grading, landscaping, drywall systems, door systems, window systems, plumbing, painting, electrical, framing and roofing systems.

49. The *Petrisor* homeowners subsequently amended their Demand for Arbitration to add additional homeowners, bringing the total to 27 homeowners as of the March 23, 2022, Third Amended Demand for Arbitration.

50. The *Petrisor* homeowners seek at least $300,000 in damages from Pulte for property damage arising out of the work, operations, and/or ongoing operations of the Defendant insurers' named insured subcontractors listed herein.

51. As a result of the *Petrisor* Claim, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

52. The *Petrisor* claimants are seeking damages from Pulte for property damage arising out of and/or resulting from the Defendants' named insured subcontractors' work on the Project. If the homeowner-plaintiffs are successful in obtaining an award against Pulte, Pulte will have incurred liability arising out of and/or resulting from the work of the Defendants' named-insured subcontractors.

53. Pulte tendered its defense and indemnity of the *Petrisor* Claims to each of the Defendant insurers under the insurance policies listed herein.

54. USIC agreed to participate in Pulte's defense under the policies it issued to Paul Johnson and XO. Cincinnati agreed to participate in Pulte's defense under the policy it issued to Paul Johnson. USIC and Cincinnati are referred to herein as the "Participating Insurers" as to Pulte's claims arising out of these policies only.

55. Other than Participating Insurers, each and every other Defendant rejected—or otherwise failed to respond to—Pulte's tenders for defense and indemnity of the *Petrisor* Claims, leaving Pulte with substantial unreimbursed defense costs.

56. Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants owe a duty to pay all of the defense fees and costs that Pulte incurred and will continue to incur in defending against the *Petrisor* Claims.

57. Pursuant to the insurance policies issued by the Defendants to their respective named-insured subcontractors, as specified herein, the Defendants have a duty to indemnify Pulte for any liability Pulte incurs as a result of the *Petrisor* Claims for property damage that arises out of and/or that is caused in whole or in part by the Defendants' respective named insured subcontractors' work.

58. The Defendants breached their duties by refusing to defend Pulte, or in the case of the Participating Insurers, failing to fully defend Pulte. On information and belief, Defendants misrepresented policy provisions and/or material facts related to coverage, failed to make prompt payment of Pulte's demands for reimbursement of its defense costs, and/or otherwise failed to respond to Pulte's tender of its defense of the *Petrisor* Claims. As a result of Defendants' conduct, Pulte has been forced to expend significant resources defending itself against the *Petrisor* Claims. As of the date of the filing of this Complaint, Pulte has incurred more than $350,000 in attorneys' fees and costs defending against the *Petrisor* Claims, and will continue to incur significant expenses defending against the *Petrisor* Claims, which are

ongoing.

59. Upon information and belief, the Defendants failed to investigate or timely respond to Pulte's tender of defense and indemnity, if they responded at all.

60. Upon information and belief, the Defendants failed to consider the allegations in the pleadings, facts provided by Pulte, or facts easily discernable.

61. Pleading further and in the alternative, in addition to these specific allegations based on insurance policy endorsements directly adding Pulte as an additional insured to each policy issued by the Defendants and listed herein, each policy listed herein above contained a provision or provisions the effect of which is to allow Pulte to stand in the shoes of the Defendants' named-insured subcontractors for purposes of coverage.

62. The above is not an exclusive list of the Defendants' potential liability to Pulte as other theories of potential coverage and recovery may be apparent based on the specific policies and/or specific actions of each Defendant.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

(By Pulte Against All Defendants)

63. Pulte realleges the allegations contained in paragraphs 1 through 62 inclusive, and incorporates them by reference as though fully set forth herein.

64. Pulte is named as an additional insured or is a known third-party beneficiary of each of the insurance policies issued by the Defendants listed herein.

65. An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendants, on the other hand, in that Plaintiffs contend that it is an additional insured under the policies listed herein, that Defendants owe a separate and independent duty to promptly provide Plaintiffs with a full and conflict-free defense of the *Petrisor* Claims, and that Defendants owe a duty to indemnify Pulte for damages arising out of the work or operations of Defendants' named-insured subcontractors.

66. Plaintiffs are informed and believe that Defendants contend otherwise.

67. Pulte seeks a judicial resolution of the controversy and a declaration of the following:

    i. Pulte is an additional insured under the Defendants' policies listed herein;

    ii. The Defendants have a duty to fully defend Pulte against the *Petrisor* Claims; and

    iii. The Defendants' must indemnify Pulte for damages arising out of the work or operations of Defendants' named-insured subcontractors.

68. A declaratory judgment is both proper and necessary so that the respective rights, duties, and obligations of Plaintiffs and Defendants may be determined.

## SECOND CAUSE OF ACTION

### Breach of Contract

(By Pulte Against All Defendants)

69. Pulte realleges the allegations contained in paragraphs 1 through 68, inclusive, and incorporates them by reference as though fully set forth herein.

70. Pulte requested that Defendants defend Pulte against the *Petrisor* Claims under the insurance policies each of the Defendants issued to their respective named-insured subcontractors, as described more fully above. Pulte has performed all obligations owing under each of the policies in connection with its tender of defense, and Pulte has satisfied all relevant conditions precedent.

71. Defendants have failed to discharge their contractual duties to defend Pulte against the *Petrisor* Claims. More particularly, Defendants, with the exception of the Participating Insurers: (1) breached their contracts by failing to promptly respond to Pulte's tenders, if they responded at all; (2) breached their contracts by refusing to provide Pulte with a defense; and (3) breached their contracts by refusing

1 to fully investigate Pulte's tender.

2     72.    The Participating Insurers have failed to discharge their contractual duties to defend Pulte against the *Petrisor* Claims by failing to provide Pulte with a full and complete defense.

    73.    As a direct and proximate result of Defendants' conduct as alleged in this Complaint, Pulte has been damaged and will continue to be damaged in an amount to be proven at trial.

## PRAYER

WHEREFORE, Pulte prays for judgment against Defendants as follows:

1. **FIRST CAUSE OF ACTION**:
   a. For declaratory relief as described above;
   b. For all costs and expenses at the full extent permitted by law;
   c. For pre-judgment interest and post-judgment interest at the full extent permitted by law;
   d. For attorneys' fees to the extent recoverable by applicable law; and
   e. For such other and further relief as the Court deems fair and proper.

2. **SECOND CAUSE OF ACTION**:
   a. For general and specific damages in an amount to be proven at trial;
   b. For punitive damages at the full extent permitted by law;
   c. For all costs and expenses at the full extent permitted by law;
   d. For pre-judgment interest and post-judgment interest at the full extent permitted by law;
   e. For attorneys' fees to the extent recoverable by applicable law, which shall be taxed against the Defendants as costs, and

f.  For such other and further relief as the Court deems fair and proper.

DATED: November 18, 2022

PAYNE & FEARS LLP
Attorneys at Law

By: */s/ Scott S. Thomas*
 SCOTT S. THOMAS

Attorneys for Plaintiffs Pulte Home Company, LLC and Pulte Development Corporation

4892-2781-4463.3